**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**IAN BALINA,**<br><br>**Defendant.** | **Civil Action No. 1:22-CV-950-DAE**<br><br>**ECF CASE**<br><br>**(Jury Trial Demanded)** |

**DEFENDANT IAN BALINA'S MOTION TO EXCLUDE**
**<u>THE TESTIMONY OF THE SEC'S EXPERT, DR. SHIMON KOGAN</u>**

Defendant Ian Balina ("Balina") hereby files his Motion To Exclude The Testimony Of The SEC's Expert, Dr. Shimon Kogan, and respectfully shows as follows:

## I. INTRODUCTION

Previously, the U.S. Securities and Exchange Commission ("SEC") entered into a cease-and-desist order with Sparkster, Ltd. and its founder, Sajjad Daya. Pursuant to that Order, Sparkster must pay over $35,0000 and Daya must pay a penalty of $250,000, along with additional penalties. The Order resulted from Sparkster and Daya's wrongful conduct, including telling the public that they had a fully developed product to sell their SPRK Tokens.

Among numerous other individuals, Ian Balina purchased SPRK Tokens. Balina purchased his tokens in a pool so that all of the pool members could obtain the same 30% discount. Balina, like the others who were fooled by Sparkster and Daya, lost money because the SPRK Tokens are essentially worthless. On the same day as the Sparkster Order, the SEC filed this action against Balina and demanded disgorgement of all "ill-gotten gains." Ill-gotten gains? ***There are no "ill-gotten gains." There was no "ill-gotten." There were no "gains."*** The simple fact is that Balina purchased

SPRK Tokens and – like others – lost money.

The SEC alleges violations of the Securities Act by (1) selling or offering to sell unregistered securities (SPRK Tokens) and (2) promoting Sparkster without disclosing that he was compensated – ***Balina was not*** – for such promotion (the 30% discount that every pool member received). The SEC's allegations are false. Balina did not sell or offer to sell an unregistered security. Balina never agreed to promote Sparkster. Blaina was never paid by Sparkster to promote it.

Instead, Sparkster won, as the crowd decided, a shark tank event in Amsterdam in which Balina was the emcee. Although Dr. Kogan stated in his report that the video of that event was something that he "relied upon and considered", ***Dr. Kogan testified that he never even viewed it.***[1]

To try and support its claims, the SEC retained Dr. Shimon Kogan as its expert. However, Dr. Kogan's proffered opinions do not meet the requirements of Rule 702 of the Federal Rules of Evidence. In addition to other flaws, Dr. Kogan admitted that ***he did not even read or view over twenty-five of the documents and videos***[2] that he claimed to have "relied on and considered" in forming his opinions. Dr. Kogan also summarized his "***methodology" as simply "review[ing] documents provided by the SEC as well as publicly available blockchain data."***[3] Balina respectfully requests that the Court exclude any testimony from Dr. Kogan.

## II. DR. KOGAN'S ADMISSIONS AND PROFFERED OPINIONS

Dr. Kogan's claimed methodology is limited to "review[ing] documents provided by the SEC as well as publicly available blockchain data."[4] Putting aside the question of whether his purported methodology meets the requirements of Rule 702 of the Rules of Evidence, he did neither. He listed

---

[1] Ex. 1, Depo. at 101:20-23. Please note that Balina filed his motion for leave to file all three exhibits referenced herein under seal [Dkt. 180].

[2] *Id.* at 96:8-11; 99:15-25; 100:7-15; 101:1-16; 101:20-23; 109:1-6; 110:11-19; 113:14-18; 114:19-20; 115:14-15; 115:18; 116:9-10.

[3] Ex. 2, Dr. Kogan Report at ¶30.

[4] *Id.*

over five pages of documents and videos that he "Relied Upon and Considered" in forming his opinions.[5] However, Dr. Kogan admitted under oath that:

- Dr. Kogan did not even read or view over twenty-five of the documents and videos.[6]
- Dr. Kogan cannot remember whether he read many of the other documents.[7]
- Dr. Kogan did not read numerous other documents in their entirety.[8]

This means that ***Dr. Kogan did not even follow one-half of his already suspect methodology*** of being fed specific documents by the SEC and performing no independent investigation.

Dr. Kogan also admitted that he did not perform any of the work concerning the publicly available blockchain data. Instead, that work was performed by a consulting company named Integra. Specifically, Dr. Kogan admitted under oath that Integra acquired the data that Integra then used to create the charts in "his" report.[9] Dr. Kogan also admitted that a middle-school student could have created the charts from the data that Integra compiled.[10] It does not require any specialized skill.[11]

Dr. Kogan further admitted that Integra, not him, created the numerous tables in Appendix C and the Etherscan screenshots in Appendix D of "his" report.[12] In fact, ***Dr. Kogan admitted that Integra wrote and revised sections of "his" report.***[13] Dr. Kogan cannot identify which sections he wrote, as opposed to sections Integra wrote.[14] Therefore, Dr. Kogan failed to follow the second half of his purported methodology.

---

[5] *Id.* at 48-53.

[6] Ex. 1, Depo. at 96:8-11; 99:15-25; 100:7-15; 101:1-16; 101:20-23; 109:1-6; 110:11-19; 113:14-18; 114:19-20; 115:14-15; 115:18; 116:9-10.

[7] *Id.* at 100:1-6; 100:16-25; 102:9-12; 111:5-21; 114:24-115:12; 115:21-116:5; 116:20-21; 123:2-25.

[8] *Id.* at 99:3-14; 103:19-104:1; 108:7-12; 116:6-8; 116:24-117:2.

[9] *Id.* at 39:5-8; 45:21-23; 50:14-23; 50:24-51:9; 54:12-15; 56:9-18; 76:7-15; 77:10-78:1; 80:4-81:11.

[10] *Id.* at 39:21-24; 41:3-19; 42:9-11; 43:24-44:13; 49:18-50:5.

[11] *Id.* at 44:14-21.

[12] *Id.* at 24:24-25:4. Balina did not include appendices C and D to Dr. Kogan's report as part of Exhibit 2 due to the confidential financial information in the appendices.

[13] *Id.* at 16:23-17:4.

[14] *Id.* at 18:5-22.

Dr. Kogan's report fails to identify any established methodology that he claimed to follow in forming his opinions. Instead, Dr. Kogan admitted that:

- ***The SEC did not ask Dr. Kogan to investigate any alternatives*** to his primary conclusion.[15]
- While ***Dr. Kogan assumed that Daya's statements were accurate*** in forming his opinions[16], he has no idea whether Daya's statements to the public were actually truthful.[17]
- In fact, Dr. Kogan did not review the SEC's cease-and-desist order against Sparkster and Daya that is listed in his report.[18]
- He also admitted that ***the SEC never asked him to determine whether Daya's statements were false.***[19]

Dr. Kogan cannot claim that he has ever used his "methodology" as an expert previously because he admitted that ***Dr. Kogan has never been offered as an expert***.[20] Dr. Kogan's testimony shows that his opinions do not meet the "gatekeeper" requirements of Rule 702.

Dr. Kogan's report contains a summary of his four opinions:[21]

1. "Balina controlled the smart contract used by the Sparkster Investment Pool."[22] In contrast, this is materially different from his final conclusion that Balina "***predominantly*** controlled the Sparkster Investment Pool."[23]
2. Balina's control of the Sparkster Investment Pool is consistent with the documentary and blockchain evidence.[24]
3. Balina "invested at least $104,883 [150 ETH] in the Sparkster Investment Pool and received a bonus of 30% on his investment."[25] However, Dr. Kogan further states that he cannot exclude the possibility that Balina spent more than $104,883 "because 5 of the 68

---

15 *Id.* at 67:3-13; 68:23-69:11.

16 *Id.* at 135:3-8.

17 *Id.* at 132:7-13.

18 *Id.* at 114:20.

19 *Id.* at 134:17-24.

20 *Id.* at 6:14-16.

21 Ex. 2, Dr. Kogan's Report at ¶8.

22 *Id.*

23 *Id.* at ¶50 (emphasis added).

24 *Id.*

25 *Id.*

Ethereum addresses" were not identifiable.[26]

4. Promoters played a significant role in initial coin offerings ("ICOs") between 2016 and 2018.[27]

None of these opinions, including the discussions of them in the report on pages 16 to 35 are admissible. Furthermore, Dr. Kogan should be prohibited from testifying concerning the "Background" section of his report as it does not constitute expert opinions and fails for the same reasons as his stated opinions.

## III. ARGUMENT AND AUTHORITIES

### A. The Court Should Exclude Opinion Testimony That Does Not Meet The Requirements Of The Federal Rules Of Evidence.

Pursuant to Rule 702 of the Federal Rules of Evidence, an expert may testify only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. An expert may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

In applying Rule 702, the trial court acts as a "gatekeeper" to ensure that "evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Acting as gatekeeper, a court's role is to prevent unqualified opinion testimony from reaching the jury. *Schneider v. Fried*, 320 F.3d 396, 404 (3rd Cir. 2003). A trial court "exercises more control over experts than over lay witnesses" because "[e]xpert evidence can be both powerful and quite misleading." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 595, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). A trial court's "gatekeeping obligation applies . . .

---

[26] *Id.*

[27] *Id.*

to all expert testimony," even where the expert testimony is not "scientific" in nature. *Id.* at 147.

To determine whether testimony is reliable, the trial court must assess whether the underlying reasoning or methodology is scientifically valid. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The party seeking admission of expert testimony bears the burden to show that the testimony is reliable. *Id.* "This requires some objective, independent validation of the expert's methodology." *Id.* Trial courts consider five non-exclusive factors in making their reliability determination: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has achieved widespread acceptance. *Daubert,* 509 U.S. at 593-94. The trial court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

Furthermore, Rule 403 of the Federal Rules of Evidence requires the exclusion of even well-founded and relevant expert evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Similarly, "[i]n addition to being reliable, expert testimony must 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Roman v. W. Mfg., Inc.,* 691 F.3d 686, 694 (5th Cir. 2012) (quoting Fed. R. Evid. 702(a)). The proffered expert testimony must be relevant to be admissible. *Id.* "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Id.* (quoting *Daubert,* 509 U.S. at 591).

As discussed below, Dr. Kogan's testimony is inadmissible under the Federal Rules of

Evidence.

**B. The Court Should Exclude Dr. Kogan's Testimony Related To His First Opinion Because It Does Not Meet The Requirements Of Rule 702.**

Dr. Kogan's first opinion is that "Balina controlled the smart contract used by the Sparkster Investment Pool."[28] As stated above, this is materially different than his final conclusion that Balina "***predominantly*** controlled the Sparkster Investment Pool."[29] The reason for this change is one of the fatal flaws of Dr. Kogan's methodology. Dr. Kogan was not asked by the SEC to investigate whether others controlled the smart contract and their role.[30] For example, Mr. Smith[31], as even Dr. Kogan admitted during his deposition, exerted control over the Sparkster Investment Pool. Dr. Kogan's failure to look at other alternatives – at the SEC's direction – is contrary to Rule 702's requirement of reliability and, standing alone, is grounds for exclusion.

Additionally, Dr. Kogan's "methodology" fails the requirements of Rule 702. Even though he failed to follow his stated methodology of reviewing documents from the SEC and blockchain data, even if he had done so, Dr. Kogan's purported methodology would still fail under Rule 702. The SEC cannot show that Dr. Kogan's "methodology" (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether it has achieved widespread acceptance. *Daubert,* 509 U.S. at 593-94. There is no methodology that Dr. Kogan actually used and, certainly, no methodology that he used that passes Rule 702's test.

---

[28] Ex. 2, Report at ¶8.

[29] *Id.* at ¶50 (emphasis added).

[30] *Id.* at 67:3-13; 68:23-69-11.

[31] Smith is a pseudonym for the person identified in the sealed documents, including the person who was identified as being paid a fee of 0.5% of everyone in the pool's Ethereum for his work with respect to the pool. Balina received no such payment.

A review of Dr. Kogan's report further evidences this fact. For example, Section 4.2 simply comprises snippets from the Simple Agreement for Future Tokens ("SAFT") with some editorializing by Dr. Kogan. However, the jury can read the SAFT just like Dr. Kogan, a non-lawyer who professed to not providing any legal opinions, can. Similarly, Section 4.3 of Dr. Kogan's report is comprised almost exclusively of snippets from a few other documents that the jury can read. As discussed above, the tables in Dr. Kogan's report are the result of publicly available data that Dr. Kogan did not collect or create and creating the tables does not require any specialized skills. Therefore, Dr. Kogan's first opinion does not meet the reliability requirement of Rule 702.

Furthermore, Dr. Kogan's opinion does not rest upon sufficient facts or data. Nor can the SEC show that Dr. Kogan's testimony is the "product of reliable principles and methods."

Finally, Dr. Kogan's opinion does not meet the relevancy requirement of Rule 702. Dr. Kogan's opinion concerns control of the Sparkster Investment Pool. However, controlling the Sparkster Investment Pool is not, even according to the SEC, a violation of the Securities Act. This is another independent basis for the Court to exclude Dr. Kogan's testimony concerning his first opinion.

Therefore, the Court should exclude any testimony concerning Dr. Kogan's first opinion.

### C. The Court Should Exclude Dr. Kogan's Testimony Related To His Second Opinion Because It Does Not Meet The Requirements Of Rule 702.

Dr. Kogan's second opinion merely is an attempt to buttress his inadmissible first opinion. Dr. Kogan's second opinion is that Balina's control of the Sparkster Investment Pool is consistent with the documentary and blockchain evidence.[32] Dr. Kogan's second opinion should be excluded for the same reasons as his first opinion.

[32] Ex. 2, Report at ¶8.

Once again, Dr. Kogan's "methodology" does not pass the requirements of Rule 702 or meet the factors set forth in *Daubert.* The SEC cannot meet its burden to show that Dr. Kogan's methodology of (1) receiving documents selected by the SEC (but not reading over twenty-five of them, etc.); (2) not being directed to look at alternative possibilities; and (3) having Integra take publicly available data and put it into tables is somehow:

(1) a methodology that can be or has been tested;

(2) a methodology that has been subjected to peer review and publication;

(3) a methodology that has a known or potential rate of error of the methodology;

(4) a methodology with the existence and maintenance of standards controlling the technique's operation; and

(5) and a methodology that has achieved widespread acceptance.

*Daubert,* 509 U.S. at 593-94. Nor can the SEC show that Dr. Kogan's opinion rests upon sufficient facts or data and is the "product of reliable principles and methods."

Additionally, as with his first opinion, Dr. Kogan's second opinion is not relevant to the SEC's claimed violations of the Securities Act.

Therefore, the Court should exclude Dr. Kogan's testimony concerning his second opinion.

**D. The Court Should Exclude Dr. Kogan's Testimony Related To His Third Opinion Because It Does Not Meet The Reliability Standards Of Rule 702, Is Not Relevant, And Violates Rule 403.**

The first part of Dr. Kogan's third opinion is that Balina "invested at least $104,883 [150 ETH] in the Sparkster Investment Pool and received a bonus of 30% on his investment."[33] During his deposition, Dr. Kogan subsequently confirmed that Balina spent 150 ETH [$104,883] to purchase the Sparkster tokens.[34] This is not in dispute. Balina, like others in the pool, paid the maximum amount of 150 Ethereum to purchase SPRK tokens. And, like everyone else in the pool, Balina received the same 30% discount.

---

[33] Ex. 2, Report at ¶8.

[34] *Id.* at 129:6-13.

However, the second part of Dr. Kogan's third opinion is that that he cannot exclude the possibility that Balina spent more than $104,883 "because 5 of the 68 Ethereum addresses" were not identifiable.[35] Dr. Kogan has provided no methodology for determining that these unidentified addresses could possibly be Balina's account.

- Nor does Dr. Kogan provide any methodology for determining whether these accounts were second or third or fourth, etc. accounts held by another member of the pool.
- Nor does he provide any methodology for determining whether these accounts were held by some other unidentified persons.

Put simply, there is no methodology, no investigation, no nothing for this rank speculation. As such, this second part of Dr. Kogan's third opinion is inadmissible because it does not meet the reliability standards of Rule 702, is not relevant, and violates Rule 403.

**E. The Court Should Exclude Dr. Kogan's Testimony Related To His Last Opinion And "Background" Section Because It Does Not Meet The Reliability Standards Of Rule 702 And Is Not Relevant.**

Dr. Kogan's fourth and last opinion is that promoters played a significant role in ICOs between 2016 and 2018.[36] However, Dr. Kogan failed to provide any methodology or basis that would meet the standards of Rule 702. Furthermore, this opinion is not tied to either Balina or Sparkster. It is an abstract opinion that is designed to confuse or prejudice the jury. It is not relevant to any of the allegations or defenses in the case. Therefore, this fourth opinion is inadmissible because it does not meet the reliability standards of Rule 702 and is not relevant to any issue in the case.

Dr. Kogan's report also contains several pages of "Background."[37] However, these are not part of the opinions that are summarized in his report. Regardless, they fail to meet the requirements of Rule 702 for reliability and, in many cases, are purportedly based on documents that Dr. Kogan subsequently admitted under oath that he had not read, could not remember reading or did not read

---

[35] Ex. 2, Report at ¶8.

[36] Ex. 2, Report at ¶8.

[37] Ex. 2, Report at ¶¶9-29.

in full. Therefore, Dr. Kogan should not be permitted to testify to any opinions that the SEC may claim are contained in his "Background" section.

## IV. CONCLUSION

For the reasons discussed above, Defendant Ian Balina Burbach respectfully requests that the Court grant his Motion To Exclude The Testimony Of The SEC's Purported Expert, Dr. Shimon Dr. Kogan, and further requests that the Court grant him all other relief to which he may be entitled.

Respectfully submitted,

*/s/ Michael L. Navarre*

Michael L. Navarre
State Bar No. 00792711
mnavarre@bnsfirm.com
BEATTY NAVARRE STRAMA, PC
901 S. MoPac Expy., Building 1, Suite 200
Austin, Texas 78746
(512) 879-5050
(512) 879-5040 (facsimile)

ATTORNEYS FOR DEFENDANT,
IAN BALINA

**CERTIFICATE OF SERVICE**

I certify that I served a true and correct copy of the foregoing instrument on the counsel of record below by email on this 12th day of September, 2023:

Fernando Campoamor Sánchez
Ivan J. Snyder
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549

*Counsel for Plaintiff Securities and Exchange Commission*

*/s/ Michael L. Navarre*
Michael L. Navarre