# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff*<br><br>v.<br><br>IAN BALINA,<br>*Defendant* | §<br>§<br>§<br>§<br>§  CIVIL NO. 1-22-CV-00950-DAE<br>§<br>§ |

# **O R D E R**

Before the Court are Defendant Ian Balina's Motion to Exclude the Testimony of the SEC's Expert, Dr. Shimon Kogan, filed September 12, 2023 (Dkt. 19); Plaintiff's Opposition to Defendant's Motion to Exclude Testimony of Dr. Shimon Kogan, filed September 29, 2023 (Dkt. 24);[1] and Defendant's Reply, filed October 11, 2023 (Dkt. 26). By Text Order entered September 13, 2023, the District Court referred the motion to this Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. Background

The United States Securities and Exchange Commission ("SEC") alleges that Defendant Ian Balina, a "self-described crypto asset investor, promoter, and influencer," offered and sold securities without a registration statement and without disclosing his consideration, in violation of Sections 5(a), 5(c), and 17(b) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), 77q(b). Dkt. 1 ¶ 1.

---

[1] By Text Order entered September 13, 2023, the District Court granted Balina's motion to seal the exhibits to his motion. The SEC argues in a footnote to its response that the exhibits should be redacted as needed and unsealed. Dkt. 24 at 8 n.8. This argument is properly made in a separate motion.

In May 2018, the SEC alleges, Balina entered into a contract with Sparkster Ltd. ("Sparkster") to invest $5 million in its initial coin offering ("ICO") of a crypto asset security called SPRK Tokens and began promoting the ICO on social media, in return for a 30 percent bonus in tokens. *Id.* ¶¶ 2, 3, 29, 44, 49, 55-57. The SEC alleges that Balina organized a Sparkster investment pool and allowed individual investors to participate in the pool by purchasing SPRK Tokens from his allocation. *Id.* ¶¶ 4, 64-68. The pool used a "smart contract" computer program to distribute SPRK Tokens. *Id.* ¶¶ 52, 64-68. The SEC alleges that Balina's distribution of SPRK Tokens through his investing pool was an unregistered offering of securities.

Balina denies that he controlled the pool. Answer, Dkt. 7 ¶¶ 64-68. He now moves the Court to exclude the testimony of the SEC's designated expert witness, Dr. Shimon Kogan.

## II.  Legal Standards

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that scientific testimony or evidence is not only relevant, but also reliable. Subsequently, Rule 702 of the Federal Rules of Evidence was amended to provide that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including scientific, technical, and other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Supreme Court has interpreted this rule as imposing a "gatekeeping role" on district courts, tasking them with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that (1) the expert is qualified; (2) the evidence is relevant; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594-95).

The proponent of expert testimony bears the burden of establishing its reliability. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). Because the *Daubert* test focuses on the underlying theory on which the opinion is based, the proponent of expert testimony need not prove that the expert's testimony is correct, but that it is reliable. *Moore*, 151 F.3d at 276. It is not the court's role to "judge the expert conclusions themselves." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018).

Trial courts ordinarily apply four factors when considering the reliability of scientific evidence: (1) whether the technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Daubert*, 509 U.S. at 593-94. This test of reliability is flexible, and *Daubert*'s list of factors "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. Because there are certain areas of expertise, "such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to

3

determine whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case." *U.S. v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (citations omitted).

When conducting a *Daubert* analysis, the trial court's main focus should be on determining whether the expert's opinion will assist the trier of fact. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). But the "helpfulness threshold is low: it is principally . . . a matter of relevance." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013). Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.  Analysis

The SEC designated Dr. Kogan to offer expert testimony on Balina's transactions on the Ethereum blockchain involving the Sparkster ICO, and on the background of ICOs, cryptocurrency, and blockchain technology. Dkt. 24 at 4-5; Dkt. 24-8 at 3. The SEC contends: "This analysis of the Ethereum blockchain and related evidence is necessary because Balina denied that he controlled the pool and, despite his experience, claimed he was unable to understand or interpret the publicly available data on the blockchain about his transactions with the pool." Dkt. 24 at 4.

Kogan has a Ph.D. in finance and is an associate professor of finance at the Wharton School, the University of Pennsylvania, and the Arison School of Business, Reichman University (Israel). Dkt. 24-8 at 3. His primary research interest is in financial technology, and he has researched, written, and taught on crypto markets and blockchain technology. *Id.* at 4.

Kogan summarizes his four opinions as follows:

(1) Balina controlled the smart contract used by the Sparkster investment pool;

(2) Balina's control of the Sparkster investment pool is consistent with documentary and blockchain evidence of his control;

(3) Balina invested at least $104,883 in the Sparkster investment pool and received a bonus of 30% on his investment; and

(4) Promoters played a significant role in ICOs between 2016 and 2018.

Dkt. 24-8 at 6-7. Balina moves to exclude all four opinions under Rule 702.

**A. First Opinion**

Balina begins by arguing that Kogan's first opinion is inadmissible because his methodology is not relevant, flawed, internally inconsistent, and does not rest on sufficient facts or data. Dkt. 19 at 7-9. Expert testimony is not relevant and should be excluded when it "does not relate to any issue in the case." *Daubert*, 509 U.S. at 591 (citation omitted). The Court finds Kogan's opinion that Balina controlled the Sparkster investment pool to be relevant because the SEC alleges that "Balina's distribution of SPRK Tokens through his investing pool was an unregistered offering of securities." Dkt. 24 at 15. Because the SEC argues that Balina violated federal securities law through the Sparkster investment pool, Kogan's testimony that Balina controlled the pool can "help the trier of fact" evaluate that claim. FED. R. EVID. 702(a).

Balina next argues that Kogan's testimony is unreliable because there "is no methodology Kogan actually used and, certainly, no methodology that he used that passed Rule 702's test." Dkt. 19 at 7. Balina contends that Kogan failed to articulate a clear set of "principles and methods" of analysis, and that sections of his report are composed "almost exclusively of snippets from a few other documents that the jury can read," albeit "with some editorializing." *Id.* at 8.

In his expert report, Kogan described his methodology as an analysis "based on a review of documents provided by the SEC as well as publicly available blockchain data." Dkt. 24-8 at 17.

5

Kogan was "assisted by" Integra FEC ("Integra"), a forensic data analytics and litigation consulting firm that "developed tools and algorithms to analyze the blockchain and has forensic data analysts and economists who have assisted me in analyzing these issues." *Id.* at 5. Kogan and Integra collected transaction details from the Ethereum blockchain for the Sparkster investment pool and compared those transactions to documents provided by the SEC and allegedly used by Balina, matching the blockchain addresses to a Google Forms spreadsheet of investors and the pool provider's database. *Id.* at 18-19. By matching public data to documents provided by the SEC, Kogan states that he can "attribute actual contributed amounts [in the investment pool] to personal identities." *Id.* at 19. Kogan opines that Balina's Ethereum address managed the pool address "by modifying the whitelist,[2] modifying the maximum and minimum investment amounts, and sending pooled investor funds to Sparkster." *Id.* at 31. Balina objects that the SEC cannot show that Kogan's methodology satisfies the *Daubert* factors. Dkt. 19 at 7.

The *Daubert* factors should be considered by the trial court "where they are reasonable measures of the reliability of expert testimony." *Kumho Tire*, 526 U.S. at 152. The factors are "meant to be helpful, not definitive." *Id.* at 151. Kogan states that he determined whether Balina controlled the Sparkster investment pool by synthesizing publicly available transaction data and data provided by the SEC to determine whether an Ethereum wallet address used by Balina edited the smart contract parameters of the Sparkster investment pool address. Dkt. 24-8 at 30-31. In other words, Kogan checked the public pool data to confirm that administrative changes were marked as performed by Balina's Ethereum address. *Id.*

The Court finds that the methods used by Kogan to cross-check public information and information provided by the SEC are sufficiently reliable because Balina's Ethereum address is

---

[2] The "whitelist" identified who was allowed to participate in the Sparkster investment pool. Dkt. 24 at 4.

undisputed and the record of transactions made on the Ethereum blockchain is "immutable, enabling the analysis of past transactions with a high degree of confidence that they actually occurred." *Id.* at 8. The Court finds that this testimony should not be excluded under *Daubert*.

Balina next argues that Kogan's opinion that Balina controlled the Sparkster investment pool should be excluded because Kogan did not personally obtain the public blockchain data, did not create the tables summarizing the data, and was assisted by Integra in writing his report. Kogan testified that it would be "impossible for me to disentangle" sections initially prepared by Integra from sections initially prepared by him. Kogan Tr. at 17:5-13, Dkt. 24-10 at 3.

Federal Rule of Evidence 703 provides: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Rule 703 "is clear that experts are not required to prepare all the documents that support an opinion as long as the information is of the type reasonably relied on by experts in his field." *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. 06-4262, 2009 WL 2408412, at *2 (E.D. La. July 28, 2009); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (stating that Rule 703 "expressly allows" opinions based on data collected by others); *U.S. ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-cv-3396, 2015 WL 5178074, at *9 (S.D. Tex. Sept. 3, 2015) (denying motion to exclude on the basis that expert reviewed documents selected by consultant). Kogan testified that his report was "a collaborative work" with Integra, that he reviewed and edited the entire document, and that he "stand[s] fully behind it." Kogan Tr. at 17:5-15, Dkt. 24-10 at 3. The Court finds that Integra's assistance does not render Kogan's opinions inadmissible.

Balina also argues that Kogan's first opinion "does not rest on sufficient facts or data," but he does not describe what facts are missing. Dkt. 19 at 8. If other facts contradict those identified by Kogan, they "affect the *weight* to be assigned [Kogan's] opinion rather than its *admissibility* and

7

should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.2d 546, 562 (5th Cir. 2004) (citation omitted). For these reasons, the Court denies Balina's motion to exclude Kogan's first opinion.

### B. Second Opinion

Kogan's second opinion is that the blockchain evidence indicating Balina's control over the Sparkster investment pool is "consistent with other documentary evidence," including Telegram messages from Balina and a Google Form he sent to potential investors. Dkt. 19 at 8; Dkt. 24-8 at 6. Balina acknowledges that Kogan's second opinion is an extension of his first opinion and argues that it "should be excluded for the same reasons as his first opinion." Dkt. 19 at 8. For the same reasons explained above, the Court denies Balina's motion to exclude Kogan's second opinion.

### C. Third Opinion

As stated, Kogan's third opinion is that Balina "invested at least $104,883 [150 ETH] in the Sparkster investment pool and received a bonus of 30% on his investment." Kogan also opines that he cannot exclude the possibility that Balina invested more "because 5 of the 68 Ethereum addresses" invested in the pool were not identifiable. Balina moves to exclude this opinion because (1) the $104,883 figure is not in dispute, and (2) Kogan's statement that he cannot exclude the possibility that Balina invested more money in the pool is "rank speculation." *Id.* at 10.

Rule 702 permits an expert to testify "in the form of an opinion or otherwise." The Court finds that the SEC has met its burden to show that Kogan's testimony that Balina invested $104,883 in the Pool is reliable.

The parties dispute whether Kogan should be permitted to opine that Balina may have invested more than $104,883 because five contributing Ethereum addresses were unidentifiable. Balina argues that Kogan "provided no methodology for determining that these unidentified addresses

could possibly be Balina's account." Dkt. 19 at 10. The SEC responds that Kogan offers no opinion who owns the five addresses, arguing: "There is nothing inappropriate when an expert notes the facts uncovered by his investigation and explains the limitations of what he can say based on that evidence." Dkt. 24 at 18. The Court agrees with the SEC. Kogan offers no speculation as to who owns the five unidentified Ethereum addresses, and his third opinion arises from his analysis of the blockchain evidence, including public Ethereum data and the documents provided by the SEC.

## D. Fourth Opinion

Kogan's fourth and final opinion is that promoters played a significant role in ICOs between 2016 and 2018. Balina moves to exclude this opinion because it "is not tied to either Balina or Sparkster. It is an abstract opinion that is designed to confuse or prejudice the jury." Dkt. 19 at 10. Balina also asks the Court to exclude any testimony related to the "Background" section of Kogan's report, which includes topics such as the "Ethereum Blockchain and ETH," "Ethereum Addresses and Wallets," and "Smart Contracts and ERC-20 Tokens." Dkt. 24-8 at 7-11. Balina argues that testimony on such terms and topics should be excluded because "the terms that will be used are common in today's world and can be defined by agreement." Dkt. 26 at 7.

Experts may offer testimony on the background or "general principles" of their fields if Rule 702 is satisfied. *See* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles."). Even if the terms Kogan addresses are common in the financial technologies field, they may remain "beyond the comprehension of an average juror." *Marines v. UPS Ground Freight, Inc.*, No. DR-07-CV-072-AML/CW, 2010 WL 8401132, at *6 (W.D. Tex. Mar. 3, 2010). The Court finds that it may help the jury to receive background information on the terms and topics in Kogan's fourth opinion and the Background section of his report.

## IV. Conclusion

For these reasons, Defendant Ian Balina's Motion to Exclude the Testimony of the SEC's Expert, Dr. Shimon Kogan (Dkt. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable David A. Ezra.

**SIGNED** on November 20, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE